Will the argument next in Dynasty Healthcare v. National Government Services, 21-1622? Thank you. Hold on a second, Ms. Anderson. Please proceed. May it please the Court, my name is Beverly Knapp Anderson. I represent the defendant and third-party plaintiff, Dynasty Healthcare, in this matter. The primary issue on appeal is whether the no-review exception to the Medicare administrative channeling requirement in 42 U.S.C. section 405H was applicable to Dynasty Healthcare's third-party plaintiff. The second-party claims against National Government Services. So you argue that this doesn't arise under the Medicare Act, the claim that Dynasty has against NGS? That is an additional argument as well, Your Honor. I wanted to first address because, frankly, I think it's the strongest argument. And I think it's a closer issue with respect to the arising under it. But I think it's a stronger argument with respect to the no-review exception. And that's why, if it pleases the Court, I'd like to address that issue first. The no-review exception was recognized by the United States Supreme Court in the Illinois Council case, in which the Court held that where adherence to the Medicare channeling requirement in section 405H would effectively mean no judicial review at all of the claims, then there is federal subject matter jurisdiction over the claims. And it's Dynasty's position. Why isn't Retina Group an adequate proxy here? Why isn't the claim that it has an adequate proxy? The reason that Retina Group is not an adequate proxy here is because Retina Group does not have the same interests that Dynasty Healthcare has. It doesn't have the same interests. It has to be sufficiently aligned that we can say that the claim is one that it could bring in the administrative review process. It has to be both sufficiently aligned and there must be a practical incentive for Retina Group to do so. Doesn't it have a practical? They could have done it before and they didn't do it. Retina Group, in fact, filed an appeal after the recoupments were requested, but then withdrew that. That occurred before Dynasty Healthcare was even aware that there was this issue at all. But I guess the question, or maybe one way to phrase the question is, is your argument that they have to have aligned incentives at every point along the timeline, but even if there are periods of time when they would be aligned and be a good proxy, if at any point their interests become adverse, then their interests aren't aligned, then they're no longer a proxy, and then all of a sudden the channeling analysis changes? I mean, does really the channeling analysis change over time in a particular case, or are we supposed to look at this sort of categorically? With respect to the recoupment aspect of the claim, there was no time when the interests were aligned because the recoupments occurred after the business relationship between Dynasty and Retina Group ended. But don't, I'm sorry, don't both of the parties want to reverse your adversary's determination that Retina was an improper or, what is it called, a non-participating provider? No, I don't believe that's true. Retina Group chose instead to withdraw their administrative remedy and instead to bring a suit against Retina Group, and I believe that that's because they viewed that as another avenue. You mean the suit against Dynasty? I'm sorry, the suit against Dynasty, correct. Correct, Your Honor. For state law negligence claims. For state law negligence claims, among others. But isn't it ultimately in Retina Group's interest, look, if the determination is withdrawn or reversed, that is in Retina's interest. I'm just looking at these things categorically and analytically. Is that right or wrong, that it is in Retina's interest to have that determination that it's a non-participating provider withdrawn or reversed? Well, it's a practical matter. Retina Group has no practical incentive to do so because they've chosen instead to proceed against Dynasty. Well, hang on, but that's a different question. Would it be a good thing for them? Let's put that, because I think that's synonymous with, would it be in their interest if the government were to change its view? And I think the answer seems to be yes. Now, whether they've made an idiosyncratic choice about where they think, what is the path that is more likely to lead them to get money back, seems to be a different question, right, of what their interests lie. Again, or someone in their situation, their interests would lie in whether they are therefore a good proxy. Maybe not a proxy in every case, but I don't think that's the test, right? Is this litigant actually doing something that would work out to the benefit of the other litigant? The test is whether judicial review would be completely foreclosed. That's what the Illinois Council Court has said. To just add to Judge Nardini's question, it seems to me that it's not entirely crazy to want to avoid this administrative morass and just sue for negligence, which obviously occurred for some way, and to not want to go into 405H and the rest of the claim charging manual from CMS and just sue in the old-fashioned way that we all understand. I mean, that's not a crazy choice. That's what Retina Group chose to do. Dynasty didn't have that option because Dynasty cannot pursue an administrative remedy. They're foreclosed from doing so. And with Retina Group not having any incentive to do so, they're adverse to Dynasty. This issue will not receive judicial review, and that's the reason why the accept the no review exception applies. But are their interests really adverse in terms of where their interests lie, or is it just that you're an easier target? Basically, their interests lie in two places, suing you and suing the government. But the fact that they're going to only choose to follow up on one of those interests is just, I don't know, just a tactical matter in a particular case. And is that really the category? Do we get that case-specific in our analysis of proxies, I guess? Well, certainly there are Court of Appeals decisions that have done that. Certainly the Binder case in the Second Circuit and the Council of Urological Associates in the D.C. Circuit, and I think that case is particularly analogous to the case here because the Court of Appeals there looked at the practical realities and said that in that case the hospital, which could have brought the administrative claim, had not done so, hadn't done so over three years' time, and they chose that there were other alternatives available instead. And that's exactly what the situation here is with respect to Retina Group. They chose a different alternative. Is it possible, again, this is a question, for that Retina Group could, for whatever reason and based on whatever motivation, withdraw from the civil litigation, so drop its claims against Dynasty and then decide at this date today to pursue an administrative process or hearing? I think that it may be too late for them at this point to pursue the administrative remedy. Because of the time frame that has now passed. Just the statute of limitations you're saying? Correct. Is there a statute of limitations? There's tolling allowed. There's tolling allowed. And I don't know that tolling would apply. They've known about it since 2009, sometime in 2009. Dynasty didn't learn about it until thereafter. I see my time has run out, so I will reserve the rebuttal. Thank you very much. And you preserve some time for rebuttal. We'll hear from your friend on the other side. Mr. Peters. Good morning. May it please the Court. David Peters on behalf of National Government Services. The District Court correctly dismissed Dynasty's claims for lack of subject matter jurisdictions. At bottom, those claims concern allegations that National Government Services misapplied Medicare's rules and regulations and resulted in over and under payments for Retina. Those are precisely the type of claims that should be channeled through the Medicare Act's remedial scheme. And Dynasty hasn't shown that exception to that jurisdiction requirement applies here. But Retina is not required to bring suit. They are the successor, right? They're the successor to the person that mischaracterized them. Your Honor, Dynasty was the billing company during the relevant time period, or during portions of the relevant time period. And who was the back? The MAC was the National Government Services. And so the allegation here, Your Honor, is by Dynasty, the billing company, asserting that the MAC, National Government Services, misapplied the Medicare rules and regulations and that misapplication... Which we take to be as true at this stage of our consideration, right? Certainly, Your Honor. But it goes to show, Your Honor, that these claims arise under the Medicare Act. Because, again, at bottom, the claims are that Retina was received in proper payments because NGS misapplied the rules and regulations. And those are the kind of claims that are channeled through the review scheme in the first instance. So that's why, as counsel argued, we turn to the Illinois Council exception. Could there really be judicial review of this mislabeling of Retina? Correct, Your Honor. Because the claims arise under the Medicare Act, they are channeled through the Medicare review scheme. There is a very narrow exception in Illinois Council. But with all due respect, Dynasty just misunderstands the holding in that case. It is not the case that judicial review turns on the individual particular case, whether one litigant could bring a claim. The question is, as a categorical matter, is judicial review for these types of claims? And it's just simply not the case that these types of claims, allegations that a MAC misapplied the rules and regulations, are foreclosed for two reasons. So the D.C. Circuit, as Ms. Anderson pointed out, seems to suggest that we should have a slightly more searching review than what I think you're proposing. So I suggested, maybe in a question, that it's a categorical review. But the D.C. Circuit has a somewhat more pragmatic review. Do you agree with that? But even in neurological studies, Your Honor, the court there suggested that if there were a party that could bring these claims, then the Illinois Council exception or the exception discussed in the Illinois Council wouldn't apply. And here, again, there's no doubt that, for one, suppliers like Retina could assert these claims. There's no debate about that. And two, Your Honor, as we pointed out in our brief, a billing company like Dynasty could also assert claims in the administrative review process that a MAC misapplied the rules and regulations. But not if it all comes to light after their relationship as the billing company has been severed, right? Because then going forward, they're no longer the agent. Or is that not right? Your Honor, a billing company can serve as an agent. It's not clear that a former billing company couldn't serve as an agent or a representative on behalf of the supplier. But even, you know, as Your Honor suggested earlier, it can't be that the channeling provision turns on such idiosyncratic issues as when the relationship ended here. As a general matter, both suppliers on their own could bring claims and billing companies could assert claims on behalf of suppliers. Well, it depends, right? I mean, that is the question. At what level of abstraction do we ask whether someone's a viable proxy? So I could see at one end of the spectrum, if you just have a spiteful proxy whose interests are 100 percent aligned, but, you know, they're billionaires. They don't care if they get money back. And they just want to spite the billing company here. And they just say, well, we're not going to file. Ha. You know, even though you're still our, I don't know, we're still perfectly aligned to all of our interests. But for whatever very idiosyncratic, spiteful reason, I'm not going to file. I could see that we don't look at that. But why don't we look at least about some of these objective facts, which is that all of these facts came to light after the severance of the relationship. Why wouldn't that be something that we look at? Your Honor, the question would still be the same, was whether judicial review was entirely foreclosed as a categorical matter. And it wouldn't be here. Again, because the supplier can assert its claims. There's no doubt about that. At least for some period before the statute ran. What is the timing, by the way? Is retina foreclosed at this point? That was one of the questions posed. Yeah, Your Honor. There are several provisions that extend the time period when a claim can be brought. We point to these in our brief, but I can provide them now. There's a good cause provision, 42 CFR 48 9.22. A party may also ask for a claim to be open within four years and for good cause and at any time to correct a clerical error. And do you take any position as to the applicability of those exceptions as of this point? I know retina hasn't asked, so maybe that's not a proper question, but do you have a view? Your Honor, it would turn, because it's depending upon whether there's good cause, whether there was a clerical error, we wouldn't want to take a position about whether those provisions would apply. But to take one step back, Your Honor, the key really is whether as these types of claims can be brought. And again, it is no question that a challenge to a max alleged misapplication of the rules can be. And frankly, billing companies... Is there a difference in your view for purposes of assessing the applicability of the exception under Illinois Council between cases arising out of disputes over amount determinations and those that seek to challenge an agency rule or regulation? Your Honor, this Court has suggested that the amount determination and the method determination, that that was a pre-Illinois Council kind of distinction that was made, and this Court has suggested that it may be the case that amount determinations still are channeled. The Court has also observed that this kind of distinction post-Illinois Council is unclear. But the same reasons why an amount determination would clearly be channeled through the Medicare Review Scheme is why these are the types of claims that should be channeled through the Medicare Review Scheme. So your view actually is that we have not clearly articulated whether that distinction is a material distinction for purposes of Illinois Council? For purposes of Illinois Council. And your Honor, that case arose in I believe it's the Furlong case, your Honor. And what's telling about that case, your Honor, that wasn't about the application of the Illinois Council exception in the sense that it wasn't about a claim being brought in federal court in the first instance. That was a due process claim. And there, your Honor, the Second Circuit ordered that additional process be afforded by the agency. And so here, your Honor, there isn't even a claim by dynasty that these kinds of challenges were presented to the agency in the first instance. And that's a non-waivable jurisdictional requirement. This wasn't satisfied here. And Ms. Anderson also points us during the How do you square what we said in Binder with what you're asking us to do here? Your Honor, dynasty's reliance on Binder just illustrates its kind of misapprehension and misapplication of the Illinois Council exception. In Illinois Council, the court held that the petitioner there, which was the council, the claims arose under the Medicare Act and the exception did not apply. Even though in that particular case, Illinois Council, because it was not a party, lacked administrative standing. And so it's not the case, your Honor, that because an individual party lacks administrative standing, therefore the exception discussed in Illinois Council applies. Rather, your Honor, it's the case that whether as a general categorical matter, claims can, review of claims are entirely foreclosed. And again, that's just not the case here. Both because as a general matter, suppliers can bring these claims and because billing agents acting on them. There's no case on point from the Second Circuit on this issue. No, your Honor. The court in Binder applied Illinois Council exception, but our position is that it's not applicable to the case here because there are parties that can assert the claims through the administrative review scheme. If there are no other questions, we would ask that the district court's judgment be affirmed. Ms. Anderson. Thank you. To respond to your Honor's question regarding whether there's a distinction between the amount determination and the mechanism with respect to the no review exception, that distinction came from the Supreme Court's decision in Mission Academy. But in the Illinois Council case, the U.S. Supreme Court said that it's more plausible to read Michigan Academy as holding that 405H would apply where it would not simply, would not apply, I'm sorry, where it would not simply channel review, but would mean no review at all. So in the Illinois Council case, the Supreme Court seems to have moved away from that distinction between the amount determination and the mechanism, at least with respect to the no review. So that's the question. Does Dynasty get review anywhere? And Dynasty cannot get review. With respect to my colleague's comment about, well, suppliers like Retina can bring this claim. Well, the issue of whether or not Retina was properly enrolled pursuant to the application that Dynasty filed on their behalf, that issue is unique to Retina. There's no other supplier that could bring that claim, administratively or otherwise, because that's unique to the issues here with respect to Retina. And we've talked before, Retina is just not incentivized to do this. Correct. Retina is not incentivized to do it. And with respect to acting as an agent, Dynasty being an agent, well, once the billing arrangement ends, first of all, it's no longer the agent of Retina. And even when it was the agent, Dynasty could not have pursued an administrative remedy on behalf of Retina without Retina's consent. And that's true now as well. I want to clarify one thing. The claim at the heart of this case, which asserts that Retina was negligibly misclassified, can be heard through Medicare Act channels. Is that correct? It cannot be heard brought by Dynasty through Medicare Act channels. Dynasty does not dispute that the claim at the heart of this claim, this case, can be heard through Medicare Act channels. Is that correct? I don't think that's accurate. No, Your Honor. We did not have an oral argument, by the way, before the district court. So you did dispute it? Correct. In our briefs, correct. Can you show me where in your briefs before Judge Shea that you disputed that? Not immediately, Your Honor. Certainly we made the argument and I didn't think there was any dispute, frankly, that Dynasty could not bring a claim for an administrative remedy at all. That's the heart of your case? I'm sorry, Your Honor. That's the heart of your case? That is the heart of our case, correct. And these are claims for indemnification and apportionment. And indemnification, of course, based on negligence. So your view is that the claim cannot be heard through Medicare Act channels? Correct. But that's only if we define the claim as you bringing the claim. I think if we define the claim as the claim that the MAC misclassified retina, do you dispute that that claim, defined in that way, not by the person bringing the claim or the entity bringing the claim, but the claim, the nature of the claim, is the kind of claim that can be brought through the Medicare process? I don't dispute that retina could have, yes, pursued that administrative claim. It's not that the claim by its nature cannot be heard. Your dispute is that you can't bring the claim because retina won't bring the claim. There's no adequate proxy. Correct. That's one of the housekeeping matters. Okay. Thank you very much. Thank you, Your Honor.